Services Capital, LLC, and Michael Fazio, accountants, by Michael Shapiro. Mr. Shapiro, if you're ready, you may proceed. Thank you, Your Honor. May it please the court and counsel, my name is Michael Shapiro, and I'm here today on behalf of the defendant, appellees, Michael Fazio, Marcorp Financial Services, and Services Capital. We'd like to thank the court in advance for its time and consideration. There are several issues in this appeal, some of which are case dispositive, but I'm going to start at the proverbial ending and discuss the issue of damages first. While that's a little bit out of order, I think I'm starting there because the damages are the clearest error and the easiest basis for this court to reverse the judgment below. That's why defendants move for remediator following trial. Remediator is both appropriate and necessary for the damages awarded, among other reasons, fall outside the range of fair and reasonable compensation. That is exactly the case here. The damages, and really this case centers around the document attached at page 54 of our appendix, and that's plaintiff's February 2019 compensation sheet. It is necessary to look closely at the items listed there because they illustrate how damages in this case were inflated by a whopping $225,000 before ever getting to the issue of interest or attorney's fees under the Wage Payment and Collection Act. The total awarded by the jury in the circuit court has several components. This information is gleaned, like I said, from the compensation sheet issued in February 2019. The items on there include $17,675 of bonuses deferred from prior years that had not yet been paid to plaintiff when she quit her job without notice. Additionally on the sheet, you find a new bonus award for the first time of $75,000 on a deferred basis, meaning it was going to be paid in future years subject to the conditions on the sheet. And finally, you have $150,000 awarded, an amount that was already paid to the plaintiff, resulting in a double recovery to her. First, let's talk about that double payment of the $150,000. This amount was already paid to Ms. McBain as a stay bonus back in August of 2018. What that was was money that Marquardt paid her to induce her to stay for another 90 days. She stayed for those 90 days and was therefore entitled to that bonus and kept it. But on the sheet here, the bonuses total that's awarded, that's discussed for the entire year of 2018, is $225,000. And there's a clear notation of a previous payment of $150,000. There was testimony at trial that this is the exact amount she had been previously paid in August as the stay bonus. By awarding that $150,000 over again, plaintiff reaped a second payment due to the error committed by the jury in the circuit court, which completely ignored the previous payment notation. Wasn't there evidence that at least supported the trial court's finding or the jury's presumed finding that that $150,000 stay bonus was exactly that? A stay bonus independent of any other bonuses that had been earned. I mean, I recognize that's not your client's position, but there's evidence in the record to support that that's what was intended, isn't there? The bonus, the $150,000 stay bonus was earned by its terms. There's no doubt about that. The question is whether it's duplicative of other bonuses or in addition to. I would say it's duplicative of what's listed on the client. And I recognize that that's the position, but is there evidence in the record that would support the contrary position? I don't believe that there is, Your Honor, because if you look at the report of proceedings at page 221 to 222, Ms. McBain admitted during her own testimony that the $150,000 previous paid was the stay bonus. And they were talking about that, I believe, in the context of this compensation sheet. That's why it's listed there as a previous payment. That's why I'm saying this is the clearest path to reversal in this case, Your Honor, because there's only one way to read this compensation sheet. That it notes the $150,000 had previously been paid. And I think this actually becomes clearer when you juxtapose that with the compensation sheet of another Marquardt executive, Jeff McCoy, that was also introduced into evidence at trial. And that sheet, while we did not include it in our appendix, is found at page C2113 of the record. Mr. McCoy did not receive a stay bonus in 2018. So when he gets a total bonus award of $250,000, there's a dash, a zero, listed for previous payment. This shows how Marquardt can and did list previous bonus payments in the February 2019 compensation sheet where there was accounting for a prior payment. That did not happen with Mr. McCoy. He didn't get a stay bonus. Therefore, nothing was noted there. Was Mr. McCoy planning on leaving? Mr. McCoy left at the same time as Ms. McBain. Is Mr. McCoy continuing? Thank you, Your Honor. Clearly, Marquardt was capable of listing on compensation sheets where a total bonus number is stated when part had already been paid and part had not been paid. The $150,000 was clearly listed as paid, and that's why that is subject to reversal. The second part of the erroneous damages award that the jury and the circuit court awarded was the new deferred bonus money of $75,000 that was awarded for the first time in February 2019. And by new money, I mean the $75,000 was never granted previously. It was set up for the first time on a deferred basis in February 2019. This was a discretionary bonus award, and indeed, all bonuses at Marquardt were discretionary, which is important to the next few points I'm going to make. Notably, there is no dispute that defendants could have awarded a $0 bonus award in February of 2019. Instead, defendants awarded a bonus of new money of $75,000 with conditions attached. Ms. McCoy did not meet those conditions because she quit her employment before the payment was due and owed. If discretion exists to award a $0 bonus, then there is certainly discretion to award some bonus subject to conditions. Conditions to a bonus are clearly allowed under the Wage Payment Collection Act and under the administrative code implementing that act. But under the Wage Act, they do have to be mutually assented to. They absolutely do need to. And if you'd like me to discuss why there was no mutual assent here, Your Honor, I'd be glad to do so. I'm asking why there was mutual assent to, you don't have to pay me if I quit, when that appears for the first time ever in this 2018 compensation seat that you referenced. Because the past practice, Section 300.450 of the administrative code establishes that past practice can give rise to an agreement. What happened in the past here, Your Honors? What happened was that every year defendants would set a bonus amount. And in the past, they had imposed new conditions, the deferred payment condition, that had never been seen before. So we have a history here of the defendants discretionarily granting bonuses and doing so with new conditions in the past. This is no different than what was done previously. So there was no mutual assent? I would say that there was no mutual assent here in this case. And in the absence of mutual assent, you can't have the contract or the Wage Payment Act. That's why I believe the judgment can be reversed in its entirety. That was the second point I was going to address today, but I'm happy to get into that now. But to the extent you do find there is some sort of agreement, it's got to come from this compensation sheet. That's the only written document on it. Notably, it's not that Ms. McVean got this compensation sheet and then immediately quit. She did quit a few days later, but in that short period of time, she actually collected bonus payments listed on this sheet in excess of $38,000. If she was collecting $38,000 of money listed on this sheet before quitting, she must have agreed to it. And if she agreed to it, she can't pick and choose which terms on the compensation sheet she likes and which she doesn't. That's inequitable to the defendants, Your Honor. She chose to accept that money. I don't believe this was an agreement. I don't believe there's any agreement on the issue of bonuses here. But if there was, she agreed to it when she accepted that $38,000, Your Honor. But if we can refer to past practices, the past practices between these two people were that in February of the following calendar year, whatever the discretionary bonus was going to be, that number was provided. And at that point, isn't there an argument that whatever that number was, it was considered earned? If there's discretion, Your Honor, however, to award a $0 bonus. And if Mr. Foss, you had said it's $0 this year, I would agree with you that there would be no recourse on the part of McVeigh. But that never happened. Instead, there was a specific dollar amount in each of the Februaries we're talking about. And why isn't that an earned bonus under the Wage Act? Two things, Your Honor. First, that wouldn't resuscitate the $150,000. That was the double payment. Separate issue. But as to the $75,000, Your Honor, it's because if there is discretion to award $0, then there is also discretion to impose conditions. Just as in, I believe it was in February of 2016 for the 2016 bonus period, that was the first time defendants imposed the deferral requirement. That bonuses wouldn't be paid all at once, but spread out over time in an effort to retain employees, a perfectly valid business reason. Here, a new condition was imposed. If you have discretion to give no bonus whatsoever, you certainly have discretion to say, I will give you a $75,000 bonus subject to these conditions I'm attaching to it. Now, Mr. Fazio testified that was the reason for the deferrals that started midway through this relationship. But what he told Ms. McVeigh, according to Ms. McVeigh, was that it was a finance thing, that there were issues in terms of the monies and the expectations, so he was going to wait. He didn't tell her, I'm going to structure this in such a fashion as to ensure your continued employment. At least according to the testimony. There was certainly evidence that he did say that. He testified to that. I'm not going to speak to evidence given the standard of review that we're facing here right now, Your Honor. But I would say that the motive behind attaching the conditions doesn't matter, because what you need, just as Hedl got to before, is mutual assent of some sort. You need to have mutual assent. And if these two parties were on two different wavelengths, there is no mutual assent. There is no contract for a contract claim, and there is no agreement for purposes of a wage payment collection act claim. And that's why this damages was inflated, first by the $150,000, and then by the $75,000. I believe the $17,000 change also is not recoverable, because I don't believe there was any agreement here at all. But at a minimum, the $225,000 overpayment to Ms. McVeigh is contrary to the compensation sheet, contrary to any agreement they may have had, and resulted in a double payment of $150,000. And when you take that $225,000 erroneous damages, and you look at it, it's not limited just to the face amount. Because of the nature of the wage payment collection act, where you have this 2% per month interest accumulating, even if the $17,675 were to stand, you have an overpayment. I did some rough math the other day, of between $180,000 and $220,000 in interest. That's a whopping amount. So the problem compounds itself, because these amounts were erroneously added. Moreover, if the court agrees with our position on the overpayment of the $225,000 in the award, plaintiff will have succeeded on less than 10% of the claimed amount she sought on the contract claim and the wage payment collection act claim. That necessitates a reevaluation of what attorney's fees she prevailed on and are awardable under the wage payment collection act. I'd like to talk a little bit now about why there was no contract or agreement here. We've already touched on many of the issues, so I'll speed through my outline on it. But I think everybody agrees that the plaintiff cannot prevail on those claims unless there's no agreement, if there is no agreement proven. You have to have mutual assent to its terms. There was no written agreement here other than the compensation sheet, which included the conditions themselves. So if that's not the agreement, then what else do you have? This was a purely discretionary bonus. There was no set criteria for the amount of it. In fact, bonuses were awarded, including in that last year, when Mark Corp had negative profits. It didn't make any money at all. It lost money. There's no criteria, no directions for how to compute it, no statement of even what factors should be considered. To simply put, there isn't an agreement here because it's purely discretionary at the defendant's call. I want to spend a few minutes talking about the breach of fiduciary duty claim unless the court has more questions on the contract or wage payment issue. Because I've only got a couple minutes left here. In the response brief, the plaintiff claims she had no fiduciary duty because she was not properly appointed as an officer as the CFO of Mark Corp. We can put that aside because she was still an employee of Mark Corp and it's black-letter Illinois law that employees owe a fiduciary duty to their employers, not to usurp corporate opportunities and not to compete with their employers directly. They may make plans to compete before they actually leave, but they can't begin the competition. And the two breaches here of each prong are intertwined in the beer church investment, which plaintiff, conspiring with her fellow executives, took for herself. And then what plaintiff also did, by setting up a competing business called Holy Hops, 13 months before she left. What were the damages resulting from this breach of fiduciary duty? $120,000 in profit on the investment, and more importantly, the compensation Ms. McBain earned during the period of her breach. Because Illinois law is clear, when an employee breaches these fiduciary duties, the employer is able to collect compensation during that period back. And as we set out in our reply brief, that totals over $420,000. And significant damage due to the fact that Ms. McBain breached her fiduciary duties to client. I know my time's running out, and I'll have a chance to address you further in rebuttal. If the court has no further questions, I will wait for then. Counsel, you said $120,000, that was the interest, excuse me, the interest on the amount of the investment. Yeah, the loans that were made for the beer church investment, they were convertible debt notes. So they could have been converted to equity. They never were. It was a little under $20,000. It was $119,000 and change. The exact amount is in our briefs and in the record. Any idea what kind of interest that was? I don't believe it was a spectacularly profitable investment. I believe they had to put more money in. But it was a net profit. That was net development cost, Your Honor. If there's no other questions. Thank you. Thank you, Your Honor. We'll give an opportunity in rebuttal, Mr. Shapiro. Thank you. Ms. Grogan. Good afternoon, Your Honors. I'm Amy Grogan. I represent Michelle McBain. I guess I will start from the back as well, since Mr. Shapiro did as well. But first we have to remember that both the jury, under the claim for breach of contract, and the court under the violation of the Illinois Wage Payment and Collection Act, found the bonus amount was due to Ms. McBain. Both triers of fact weighed the evidence and found Ms. McBain was owed the $242,675. So let's talk briefly about the stay bonus and the subtraction problem. If you look at Plaintiff's Trial Exhibit No. 3, it sets forth an email which was sent to Ms. McBain stating the terms of the stay bonus, which was that she would stay. It says nothing about the fact that this is going to be subtracted from any year-end bonus, that it is part of her year-end bonus, that it has anything to do with her year-end bonus. It simply says, we want you to stay. We know you're unhappy with how it's going, where there's nothing in writing. Stay. And she stayed. And she earned that $150,000. Both the court and the jury found that that was a separate contract and that she earned it. So you go back to Exhibit No. 7, and just because Mr. Fazio, who was a witness in this case, who the triers of fact had the opportunity to judge, subtracted that from the earned bonus, does not make that a contract that has to be subtracted. Instead, if you look at Exhibit No. 7, Mr. Fazio himself awarded, in 2019, after the close of 2018, $225,000 to Ms. McBain. And then he deferred the entire amount. So when counsel stated that Ms. McBain was paid $38,000, she was paid $38,000 from prior year bonuses. It had nothing to do with the 2018. She was not paid one dime from that year. So one has to consider that when you consider what she was accepting during the four days before she quit. And instead, she quit because she knew, and if you look at that Exhibit No. 7, it's called a new deferral schedule, with the words new, and then has the three asterisks, to be paid in February of each year should a person be employed. The testimony that Ms. McBain said was that was the first time she ever saw it. And in fact, when questioned, Mr. Fazio couldn't state that he in fact told her that that was a term. He just assumed that she knew. So all parties testified to the employment of Ms. McBain as CFO. All testified she was awarded salary and yearly bonuses. Mr. Fazio testified that he actually awarded the 2018 bonus. So can you retroactively put a term on an award of a bonus and expect it to apply? You can't. And that's where the breach of contract comes in, and that's where the Wage Payment Act comes in. How can you say retroactive? Does that go back to the email that you referred to? It goes back to the fact that it's the first time that he asked that she be paid in February of each year should it be employed. If that's a term that he's handing her in February of 2019, it can't apply to her prior bonuses. It can't apply to 2018, 2017, 2016. It's a new term, and she quit because there's a new term. And the case law states that even if you're an at-will employee and you continue on, yeah, then you got your new term. She didn't continue on. She quit. And so she did not agree to that. It doesn't matter that she was at-will. He could have said zero when he put the she together, correct? Correct, but he did not. If he said $225 but said that $150, then $225 was paid, isn't that a unilateral action that he was also entitled to do? I don't know that I understand your question. Well, it doesn't make sense that it's written this way, but this is the way he wrote it. So it's $225 was the bonus, but I'm going to count $150 from the stay bonus against the $225 bonus. Correct. And it's my contention that the stay bonus was a separate contract that was, in fact, put in an email that was entered into evidence as Exhibit Number 3 that set forth that it was a separate contract, that you stay and we're going to pay you $150. And this is a bonus, and this says this is her total bonus for 2018. So if he wanted to arrive at the amount that may have been in his head, Mr. Fazio, he should have put $75. I guess if it – well, I don't know, what's $225 minus $150? You're asking me to do math in my head. I'm going to tell you that's why I became a lawyer. Math in my head is not my – But your point is that if the stay bonus were not a separate contract, then until in 2019 it's set forth, if Mr. Fazio wanted to, he could apply that. But the point is it was a separate agreement, and he doesn't get to then alter that separate agreement. Correct. That Exhibit 3 makes it a separate agreement, and most importantly, both the court and the jury agreed that that, in fact – so with the testimony, with the exhibits, and everything in front, that determination and that argument was made, but that $150 was considered a separate contract. By the way, that stay agreement wasn't stay indefinitely, unless and until I paid. It was 90 days. And it ended in November of 2018, and she stayed. And so we were three, four months past that. And so she earned that. It actually three, four months past it, and it was paid to her before this subtraction now. So then that leads me to the breach of contract versus the wage act. The wage act certainly makes the idea of an employment agreement looser than having to have something in writing. But certainly when you get to the fact that Mr. Fazio put Exhibit 7 into writing, he set forth that she was due that bonus, that under the wage act entitles her to $225,000. And in addition, she had already had all the deferrals that were due and owing to her. And that is what consists of the amount that both the jury and the court awarded. I did want to add, and I wanted to have – there was something new that was put into the reply brief that I wanted to briefly touch on. There was an argument that counsel made, or that defendants made, in which they stated that the attorney's fees should have not been all awarded due to the fact that it wasn't a common core element, that the actual breach of fiduciary duties should have been separated out and it should have been some fraction of the attorney's fees. That was never argued at the trial court. They actually had no argument in response to our petition for attorney's fees. It was only on interest that the defendants put forth. Then in addition, it was not even in the appellate brief. It first comes up into the reply. So I want to just point out to the court that we believe that it was all considered a part of the core operative facts because the breach of fiduciary duty was an affirmative defense for the complaint. But most importantly, that argument was waived. There's no way that they can bring that argument now. It was not argued before the trial court. It was certainly not even argued in the appellate brief. So regardless of whether it was waived, the breach of fiduciary duty becomes part of the core operative facts when it becomes an affirmative defense to the payment under the Wage Act. So that leaves discretion and whether it was up to the discretion of Mr. Fazio to actually award the bonus. Whether it was up to his discretion as to the amount, we discussed even if it was zero. The discretion is no longer applicable when he actually awards it. That is why Ms. McVeigh was entitled to the $225,000 because it was awarded. So lastly and briefly, I'll talk about the breach of fiduciary duty. After a jury trial on the breach of fiduciary duty, they determined that there was no breach. And in addition, the court again had to determine it as it was an affirmative defense. They stated that there was no breach of fiduciary duty for several reasons. And the first of which is the actual Beer Church investment opportunity was brought to MarCorp by Joe Lyons. He brought it to MarCorp. Mr. Fazio actually went out to Beer Church. He saw it. He never followed up. Joe Lyons was actually an attorney himself. He was a 1099. He wasn't an employee. He had no duty to actually bring the investment to MarCorp. It wasn't Ms. McVeigh's investment. Ms. McVeigh was under no contract in which she wasn't allowed or had to report what she invested in. And he, in fact, brought it to Mr. Fazio, or in a way, because they all went out there together. And Mr. Lyons decided that he didn't want MarCorp or Mr. Fazio investing. But even if he hadn't, Mr. Fazio never followed up. He never went and said, Hey, Joe, I want to invest. Missy, go research it. I want to be a part of MarCorp. There was no evidence at all that Mr. Fazio followed up and certainly did not follow up with Ms. McVeigh. She was under the impression that it was not coming to MarCorp. She knew that Mr. Fazio had gone out there, and she invested. They lost their shirts in that investment. And Mr. Fazio knew after the fact that they invested. And then they lose their shirts, and then this lawsuit happens, and then we have a counterclaim for breach of fiduciary duty. This is not a breach of fiduciary duty. This is, in fact, a good counterclaim. So the jury and the judge were correct in finding that there was no breach of fiduciary duty because she did not have the ability to bring it. There was no restrictions on her investment. They weren't competing. It was a brewery that was going to do microbrews. I think it's pretty successful now. It was never successful while they invested, and they ended up having to sue in order to get their investment back. And if you have no other questions, that is mine. Just a second. Thank you, Ms. Grogan. Mr. Shapiro, rebuttal. Thank you, Your Honor, briefly. I'm going to go back to the compensation sheet here, and I want to talk about the sheet simply notes that the total bonus for the year was $225,000. It seems to me that there's an argument being made that this is $225,000 of bonus being awarded in addition to what had already been paid. But that's not what the sheet said. That interpretation is contrary to its plain terms because what you also have at the very top of the sheet there is the base salary of $115,000. There was certainly no claim that because base salary was listed here, Ms. McBain was also entitled to recover that under the Wage Payment Collection Act or for a breach of contract following her decision to quit her employment. She had already been paid the base salary, though, correct? She had already been paid the base salary. She had also already been paid the $150,000. Absolutely. So how can we double count the $150,000? The $150,000 is double counted because when you look at the bonus payment line, it's listed there as a previous payment. There's no reason to list that as a previous payment otherwise. Unless you want it as a credit. Why wouldn't you just list $75,000 as the bonus? Because I believe that this sheet, and this is a very good question, and that's why base was listed also. This was an effort by defendants to list the total compensation that had been paid for the past year. Base salary and bonus. Base salary had already been paid. Part of the bonus had already been paid. It's the complete thing listed here. And what plaintiff says is that all the bonus money was deferred and I don't get any of it now. But when you look at the 2018 deferral, it's listed clearly as $75,000. The $150,000 doesn't appear anywhere else in the sheet except in total for the year and noted as a previous payment. If this was a $225,000 bonus on top of the $150,000 that had already been paid, then the 2018 deferral would have said $225,000. It doesn't. It says $75,000. And that's another way this sheet clearly illustrates the prior payment of the $150,000 wasn't a new bonus here. It was already paid. It was earned, although it should be clawed back due to breach of fiduciary duty. That's a separate issue. But it had already been paid. It wasn't subject to clawback because Ms. McBain did stay the 90 days. And then it was just listed here as the total compensation for the year, Your Honors. Would you agree that the timing of that document being created after obviously there were concerns that she was going to leave and the 90 days had already run, that the timing of the creation of that in your argument now at least could be perceived by the jury, the fact finder, as a little bit with skepticism? I don't believe so, Your Honor, because the $150,000 is clearly listed on it already. This sheet was an effort to list the total compensation for the year and explain what new bonus amounts were being awarded. There was no reason to award that $150,000 that had already been paid. It would render that term of this completely superfluous. Without this sheet, there's no bonus. Without this sheet, there's no bonus. Because there's no way to calculate it. It's not earned. I would agree with that, Your Honor. That goes also to the discretionary nature of the bonuses here. What it comes down to, Your Honors, at the end of the day is that the previous payment of the $150,000 is listed as a previous payment. I could see how a jury or a judge would conclude otherwise if the stay bonus had been for $175,000 and it said prior payment of $150,000 here or some other numbers. It doesn't matter. If they didn't match up precisely, that would make sense. But given that you have an indisputable prior payment of the $150,000 and you have the $150,000 indisputably described here as a previous payment, it's clear what the sheet was doing, Your Honors. If there are no further questions, I thank the Court for its time. Thank you, Your Honors. Thank you very much. Thank you. We thank both sides for spirited arguments. We will take the matter under advisement and render a decision in due course.